UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EARL J. WILSON,

               Petitioner,

     v.

COREY, Superintendent of Auburn
Correctional Facility,

               Respondent.

**DECISION AND ORDER**

6:22-CV-06347 EAW

## I.    __INTRODUCTION__

*Pro se* petitioner Earl J. Wilson ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1).[1] Petitioner challenges the constitutionality of the judgment entered against him on November 19, 2018, in New York State, Seneca County Court (Healy, A.J.), following his guilty plea to a 25-count indictment charging him with, among other offenses, driving while intoxicated, aggravated vehicular homicide, and first-degree vehicular manslaughter. Petitioner is currently serving the sentence imposed on that judgment.[2] For the reasons below, the request for a writ of habeas corpus is denied, the petition is dismissed, and a certificate of appealability is denied.

---

[1]    Page citations to pleadings filed by Petitioner are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page. Page citations to pleadings filed by Respondent are to the original pagination.

[2]    *See* https://nysdoccslookup.doccs.ny.gov/ (search results for DIN 16B2430 (last accessed July 6, 2025)).

## II.    BACKGROUND

### A. Crime[3]

On September 16, 2015, after spending the day drinking at the home he shared with his girlfriend, Karen Inscho ("Inscho"), Petitioner took her pick-up truck without her permission and drove to a store.  (04/09/18 T: 80-82, 87-89 (Petitioner); 04/10/18 T: 25-26 (Petitioner); 04/10/18 T: 12, 29 (Petitioner); 04/10/18 T: 76-77 (Inscho)).[4]  At the time, Petitioner's license had been suspended or revoked more than a dozen times for multiple reasons, including several convictions for driving while intoxicated.  (04/10/18 T: 12-14 (Petitioner); SR: 90-92).[5]

While returning home, Petitioner drove southbound on Route 96A in Seneca County when he suddenly swerved across the center line and struck a motorcycle traveling in the opposite direction.  (04/10/18 T: 61-66 (Tracy Harris).  Steven Lester ("Lester"), the operator of the motorcycle, and his passenger, Patricia Perryman ("Perryman"), died almost immediately at the scene.  (SR: 133-36).

---

[3]    The following factual summary is gleaned from the testimony given by witnesses at a three-day evidentiary hearing held in April 2018 in Seneca County Court after Petitioner's first conviction was vacated on direct appeal.

[4]    Citations in parentheses to "month/day/year T: " refer to the original pagination of the court transcripts from Petitioner's criminal proceeding in Seneca County Court.  The name of the witness who provided the testimony is in parentheses.  The transcripts were filed by Respondent at Docket 19-3.

[5]    Citations to "SR:" refer to the Bates-stamped page numbers of the state court records filed by Respondent at Docket 19-2.

Petitioner fled on foot but was apprehended by an off-duty New York State Police Trooper. (04/10/18 T: 89-91, 94 (Gregory Cool)). Petitioner failed all three field sobriety tests administered to him by another New York State Police Trooper. (04/10/18 T: 101-02 (Kenneth Hilkert)). Petitioner later was found to have a blood alcohol content ("BAC") of 0.23 of one per centum by weight of alcohol, about three times the legal limit.[6] (SR: 110).

New York State Police Investigator Kenneth L. Smith ("Investigator Smith"), a collision reconstructionist, investigated the crash scene and determined that the impact occurred about five feet east of the center lane in the northbound lane, the motorcycle's lane of travel. (04/10/18 T: 59-61, 124 (Investigator Smith); 04/13/18 T: 11-12 (Investigator Smith)). The main cause of the collision was that Petitioner "crossed over into the northbound lane striking the motorcycle." (04/13/18 T: 12 (Investigator Smith); *see also* 04/10/18 T: 60 (Investigator Smith)). There was no evidence that Lester was traveling at an excessive speed or driving erratically prior to or at the time of the crash. (*See* 04/10/18 T: 61-62 (Harris)).

Lester's toxicology report indicated that at the time of the crash, he had BAC levels of .081 and .098 and was positive for marijuana metabolites. (SR: 164-65). Perryman's toxicology report was positive for alcohol and marijuana metabolites. (SR: 166). But even assuming Lester was intoxicated as a matter of New York State law, it did not change Investigator Smith's opinion as to the cause of the crash. (04/13/18 T: 13 (Investigator Smith)).

---

[6]    *See* New York Vehicle and Traffic Law § 1192(2) (stating that BAC of .08 or higher is *per se* evidence of intoxication).

## B. Indictment

On November 6, 2015, a Seneca County grand jury issued a 25-count indictment
(SR: 41-47) charging Petitioner with driving while intoxicated (New York Vehicle and
Traffic Law ("V.T.L.") §§ 1192(3), 1193(1)(c)(I)) (count 1); aggravated driving while
intoxicated (V.T.L. §§ 1192(2-a)(a), 1193(1)(c)(I)) (count 2); driving while ability
impaired by the combined influence of alcohol and marijuana (V.T.L. §§ 1192(4-a),
1193(1)(c)(I)) (count 3); aggravated vehicular homicide (New York Penal Law ("P.L.")
§ 125.14(1)) (counts 4 and 5); aggravated vehicular homicide (P.L. § 125.14(2)) (counts 6
and 7); aggravated vehicular homicide (P.L. § 125.14(3)) (counts 8 and 9); aggravated
vehicular homicide (P.L. § 125.14(4)) (count 10); first-degree vehicular manslaughter
(P.L. § 125.13(1)) (counts 11 and 12); first-degree vehicular manslaughter (P.L.
§ 125.13(2)) (counts 13 and 14); first-degree vehicular manslaughter (P.L. § 125.13(3))
(counts 15 and 16); first-degree vehicular manslaughter (P.L. § 125.13(4)) (count 17);
second-degree manslaughter (P.L. § 125.15(1)) (counts 18 and 19); first-degree aggravated
unlicensed operation of a motor vehicle (V.T.L. § 511(3)(a)(i)) (count 20); operating a
motor vehicle without an interlock device[7] (V.T.L. § 1198(7)(a)) (count 21); reckless
driving (V.T.L. § 1212) (count 22); unlicensed operation of a motor vehicle (V.T.L.
§ 509(1)) (count 23); failure to keep right (V.T.L. § 1120(a)) (count 24); and failure to use

---

[7]      An ignition interlock device is "[a]ny blood alcohol concentration equivalence
measuring device which connects to a motor vehicle ignition system and prevents a motor
vehicle from being started without first determining . . . that the operator's equivalent
breath alcohol level does not exceed" the legal limit as defined by V.T.L. § 1198.  V.T.L.
§ 119-a (deemed repealed Sept. 1, 2025).

designated lane (V.T.L. § 1128(a)) (count 25).  In addition, the prosecutor filed a special

information (SR: 48-50) alleging that Petitioner had five prior convictions for driving while

intoxicated in violation of V.T.L. § 1192(2) or (3).

### C. First Guilty Plea

On February 29, 2016, Petitioner appeared before Seneca County Court Judge

Dennis F. Bender ("Judge Bender") with assigned counsel, John Nabinger, Esq. ("first

counsel").  The prosecutor said he had extended a plea offer which required Petitioner to

plead guilty to count 2 (aggravated driving while intoxicated (V.T.L. §§ 1192(2-a)(a),

1193(1)(c)(I)); counts 4 and 5 (aggravated vehicular homicide (P.L. §§ 125.14(1)); and

counts 18 and 19 (second-degree manslaughter (P.L. § 125.15(1)) of the indictment.

(02/29/16 T: 2).  In exchange for Petitioner's guilty plea to these five counts, Judge Bender

committed to imposing a term of 15 years to life in prison, even if he later determined that

Petitioner should be sentenced as a persistent felony offender.[8]  (*Id.*).  Petitioner said he

wanted to accept the offer.  (*Id.*).

After a standard colloquy, Petitioner entered guilty pleas to counts 2, 4, 5, 18, and

19.  (02/29/16 T: 3-11).  Petitioner also admitted to the 2014 driving while intoxicated

---

[8]     "[U]nder New York's discretionary persistent felony offender sentencing scheme,
once the [prosecution] prove[s] beyond a reasonable doubt that a defendant is a persistent
felony offender (i.e., a twice-prior convicted felon), defendant is eligible to be sentenced
as a discretionary persistent felony offender. . . ." *People v. Quinones*, 12 N.Y.3d 116, 127
(2009).  The sentencing court then "may consider defendant's 'history and character' to
determine whether a discretionary persistent felony offender sentence is warranted." *Id.*
(citing P.L. § 70.10(1), (2); New York Criminal Procedure Law ("C.P.L.") § 400.20(1),
(5), (9)).

conviction set forth in the special information. (02/29/16 T: 11-12). Sentencing was set for March 28, 2016. (02/29/16 T: 13).

Sentencing did not occur as scheduled because Petitioner requested a new attorney. On April 22, 2016, the parties appeared before Judge Bender to address Petitioner's complaints about first counsel. (04/22/16 T: 2). Although Petitioner could not articulate how first counsel had allegedly "intimidated . . . and coerced [him] to plead guilty," Judge Bender exercised his discretion to appoint new counsel, citing "the seriousness of this case." (04/22/16 T: 2, 6).

### D.  Motion to Withdraw First Guilty Plea

On June 6, 2016, Petitioner appeared with his newly appointed attorney, Rome Canzano, Esq. ("defense counsel"), who had filed a motion to withdraw the plea on Petitioner's behalf. (06/06/16 T: 2-3). In the motion, Petitioner claimed that the prosecutor withheld copies of the victims' autopsy and toxicology reports and thereby violated *Brady v. Maryland*, 373 U.S. 83 (1963), requiring disclosure of exculpatory material; and that first counsel was ineffective for failing to obtain those reports from the prosecution, despite Petitioner's specific request that he do so. (06/06/16 T: 2-3).

Judge Bender found that Petitioner's affidavit in support of the motion to withdraw did "not allege anything which negate[d] any element of the offenses to which he pled." (06/06/16 T: 2). However, Judge Bender recently had been advised of the contents of the reports in question, and he deemed them to constitute possible *Brady* material. (06/06/16 T: 3). Accordingly, Judge Bender ordered the prosecution to provide defense counsel with copies of the reports, and he directed defense counsel to discuss the reports with Petitioner

- 6 -

and determine whether he still wanted to withdraw his plea. (*Id.*) The matter was adjourned to June 20, 2016. (*Id.*).

At the next appearance on July 18, 2016, defense counsel advised Judge Bender that Petitioner "unequivocally" wanted to proceed with his motion to withdraw his plea. (07/18/16 T: 2). During oral argument, defense counsel contended that the victims' autopsy and toxicology reports were exculpatory and would have mitigated Petitioner's culpability, and therefore Petitioner had a right to receive them before deciding whether to plead guilty. (07/18/16 T: 2-5). Defense counsel argued that without access to the reports, the plea could not have been knowing, intelligent, and voluntary. (*Id.*). The prosecutor asserted that Petitioner never made a discovery demand for the victims' autopsy and toxicology reports and that, in any event, his office "did not withhold anything from the defen[se]." (07/18/16 T: 5).

Judge Bender denied the motion to withdraw from the bench. (07/18/16 T: 6-11). Judge Bender noted that Petitioner had not challenged the findings of Investigator Smith,[9] the collision reconstructionist, regarding the circumstances of the crash, including that Lester's motorcycle was not traveling at an excessive speed and was within its own lane of traffic when struck. (07/18/16 T: 11). Judge Bender found it "difficult . . . to ascertain" how Lester's autopsy and toxicology reports "would be helpful to [Petitioner]'s defense." (*Id.*). Judge Bender ruled that even assuming the autopsy and toxicology reports were

---

[9]    Investigator Smith prepared two reports but neither of them are in the state court records filed by Respondent.

*Brady* material, Petitioner's guilty plea forfeited any *Brady* claim. (*Id.*). Accordingly, Judge Bender denied the motion to withdraw in all respects. (*Id.*).

### E. First Hearing on Persistent Felony Offender Issue

The parties next appeared before Judge Bender on August 19, 2016, for a hearing on the persistent felony offender determination. Prior to the hearing, Judge Bender heard oral argument from defense counsel on Petitioner's motion for reconsideration as to the denial of the motion to withdraw. (08/19/16 T: 4-5). The prosecution opposed the motion and relied on their opposition papers. (08/19/16 T: 5). Judge Bender denied the motion to reconsider, finding that it did not present any new factual allegations or rely on a change in the relevant law. (08/19/16 T: 5-6).

During the ensuing persistent felony offender hearing, the prosecution presented documentary evidence and called multiple witnesses. (08/19/16 T: 6-62). The defense did not present evidence or call witnesses. (08/19/16 T: 62). Judge Bender found that Petitioner met the statutory definition of a persistent felony offender and that Petitioner's character and criminal history warranted placing him under lifetime supervision. (08/19/16 T: 63-66).

Judge Bender then sentenced Petitioner as a persistent felony offender to concurrent indeterminate terms of 15 years to life in prison on each of the five convictions. (08/19/16 T: 73-76). The 20 charges not included in the plea were dismissed. (08/19/16 T: 76).

### F. Direct Appeal of First Conviction and Remittal Hearing

Represented by new counsel, Petitioner pursued a direct appeal of his conviction, chiefly arguing that Judge Bender erroneously denied the motion to withdraw the plea. On

March 23, 2018, the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division"), agreed that Judge Bender should not have denied the motion without a hearing on the *Brady* claim. *People v. Wilson*, 159 A.D.3d 1600 (4th Dep't 2018) ("*Wilson I*"). The Appellate Division rejected the prosecution's contention that Petitioner forfeited his right to raise the alleged *Brady* violation by pleading guilty. *Id.* at 1601. With regard to the *Brady* claim's merits, the Appellate Division stated that the prosecution "correctly concede[d]" it was charged with having knowledge of the reports because they were in the possession of the New York State Police prior to the plea proceeding. *Id.*

The prosecution maintained that the reports did not contain exculpatory material, but the Appellate Division disagreed. *Id.* According to the Appellate Division, evidence of Lester's intoxication was relevant to the cause of, and Petitioner's culpability for, the fatal crash. *Id.* Accordingly, the prosecution had a duty to disclose the reports to the defense. *Id.* The Appellate Division further rejected the prosecution's assertion that Petitioner should be charged with knowledge of the reports' contents based on his assertions that police officers had informed him that Lester was intoxicated. *Id.* at 1602.

The Appellate Division held the appeal and remitted the case for an evidentiary hearing on Petitioner's motion to withdraw his plea based on the failure to disclose the victims' autopsy and toxicology reports. *Id.* The Appellate Division did not address Petitioner's remaining contentions in his appellate brief. *Id.*

On remittal, Judge Bender conducted an evidentiary hearing on April 9, 10, and 13, 2018. Multiple witnesses testified concerning the circumstances leading up to, and

following, the fatal crash.  Judge Bender set April 20, 2018, as the due date for final written submissions on the motion to withdraw the plea and reserved decision.[10]

On June 29, 2018, the Appellate Division unanimously dismissed the appeal based on the parties' stipulation of discontinuance signed on April 25 and 26, 2018.  *People v. Wilson*, 162 A.D.3d 1762 (4th Dep't 2018) ("*Wilson II*").

### G. Second Guilty Plea

On July 16, 2018, Petitioner appeared with defense counsel before Acting Seneca County Court Judge Richard M. Healy ("Judge Healy"), as Judge Bender had since retired.  (07/16/18 T: 2).  Judge Healy said that at an earlier pretrial conference,[11] he had advised the parties that if Petitioner pleaded guilty, he would not adjudicate Petitioner a persistent felony offender and would impose a sentence of 12½ to 25 years' imprisonment.  (07/16/18 T: 2-3).  However, after further reviewing Petitioner's criminal history and the circumstances of the crash, Judge Healy "fe[lt] lifetime supervision [was] necessary for [Petitioner]."  (07/16/18 T: 3).  Accordingly, Judge Healy withdrew the sentencing commitment of 12½ to 25 years.  (*Id.*).  Judge Healy advised Petitioner that if he still wanted to plead guilty, any plea "will be unconditional," meaning there would be no sentencing commitment.  (*Id.*).  Judge Healy scheduled the matter for a suppression hearing on August 31, 2018, and scheduled trial for September 24, 2018.  (07/16/18 T: 3-4).

---

[10]    Judge Bender apparently granted Petitioner's motion to withdraw his plea, but a copy of the decision is not contained in the state court records.

[11]    Respondent states that a copy of the transcript of this appearance is unavailable. (Dkt. 18 at 6 n.6).

At the August 31, 2018 appearance, defense counsel said that Petitioner was prepared to plead guilty to all 25 counts of the indictment. (08/31/18 T: 2-3). Defense counsel asked Judge Healy to reconsider his withdrawal of the 12½-to-25-year sentencing commitment, but Judge Healy declined to do so. (*Id.*). Judge Healy reiterated that after further reviewing Petitioner's criminal history and the facts of the case, he believed "lifetime supervision was appropriate" for Petitioner. (08/31/18 T: 4). However, Judge Healy stated that he had not yet decided on the sentence he would impose. (*Id.*; *see also* 08/31/18 T: 6). Judge Healy told Petitioner:

> [A]t this point I feel that lifetime supervision is appropriate if you're found guilty of these crimes. . . . I don't know if you want to enter a plea— unconditional plea, that's what you'd have to do. And then you can argue, but again, I don't know if you want to do that or not.

(08/31/18 T: 5).

Judge Healy reminded Petitioner that if he went to trial, he had the right to testify and that the defense could introduce Lester's toxicology results. Petitioner said he understood. (08/31/18: 7).

Judge Healy took a recess to allow Petitioner to confer with defense counsel about whether to plead guilty without a sentencing commitment. (*Id.*). When the proceedings resumed, defense counsel stated that Petitioner wanted to enter an unconditional plea. (08/31/18 T: 8). Judge Healy addressed Petitioner directly again, stating, "But I want you to understand it's really an unconditional plea. I'm not telling you that I will not initiate a persistent felony offender proceeding." (*Id.*; *see also* 08/31/18 T: 9 ("I want it clear that you really are pleading unconditionally. . . . I'm not telling you that I will [initiate a

persistent felony offender hearing], but I'm not telling you that I won't.")). Judge Healy reminded Petitioner that he previously had been adjudicated a persistent felony offender after his first guilty plea. (*Id.*).

Judge Healy stated again that, based on his review of Petitioner's criminal history and the facts of the case:

> I felt that lifetime supervision was appropriate and as a result I wasn't willing to go along with the 12½ to 25 years, but that doesn't mean I won't listen to you and your attorney, I'll also listen to the District Attorney. I'll listen to the family members, but I want you to understand that, Mr. Wilson, are you clear on that?

(08/31/18 T: 9). Petitioner replied, "Yes, sir." (*Id.*).

Judge Healy then asked defense counsel and the prosecutor to state their understanding of the plea offer on the record. Defense counsel said that the plea was unconditional, meaning that Judge Healy had "not committed to any sentence whatsoever," and that Petitioner could be sentenced as a second felony offender or a persistent felony offender. (08/31/18 T: 12). The prosecutor said that Petitioner would be pleading guilty without "any type of [sentencing] commitment." (08/31/18 T: 13). The prosecutor noted that if Petitioner was adjudicated a persistent felony offender, he faced a sentence of "between 15 to life to 25 to life." (*Id.*).

Judge Healy asked Petitioner if any promises or representations had been made to him apart from what the parties had discussed in open court; Petitioner said no. (08/31/18 T: 14). Judge Healy repeated that Petitioner was "really pleading guilty unconditionally," that the judge was "not committed to any sentence at this point," and that if Petitioner was not adjudicated a persistent felony offender, the minimum sentence was about 7 to 14

- 12 -

years' imprisonment and the maximum sentence was 12½ to 25 years' imprisonment. (*Id.*). Petitioner said he "would not ask [for] . . . or expect anything less than 12½ to 25 years if you were to agree to that." (*Id.*). Judge Healy reiterated that he might or might not initiate a persistent felony offender proceeding. (*Id.*). Judge Healy asked whether Petitioner understood that he could be sentenced as a persistent felony offender and receive "anywhere from 15 up to 25 years to life in prison." (08/31/18 T: 15). Petitioner responded: "Yes." (*Id.*).

Judge Healy next asked whether any promises had been made to induce Petitioner to plead guilty, and Petitioner confirmed that no one had "threatened, pressured or coerced [him] into pleading guilty." (*Id.*). Petitioner further confirmed he had no physical or mental condition that would interfere with his ability to understand the proceedings or to plead guilty voluntarily, that he had not taken any substances that would affect his understanding of the proceedings or ability to plead guilty voluntarily, and that he had discussed the plea thoroughly with defense counsel. (08/31/18 T: 15-16).

Judge Healy advised Petitioner of each of the trial rights he was relinquishing by pleading guilty, including the rights to be tried by a judge or jury, confront his accusers, call witnesses, present evidence on his behalf, remain silent, enjoy the presumption of innocence, and require the prosecution to prove his guilt beyond a reasonable doubt. (08/31/18 T: 16). Petitioner acknowledged that by pleading guilty he was giving up each of these rights and that a conviction by guilty plea was the same as a conviction after trial. (*Id.*).

Petitioner then admitted under oath that he was guilty of each of the 25 counts in the indictment. (08/31/18 T: 17-22). He admitted that when he crashed his truck into Lester and Perryman's motorcycle, he was intoxicated and under the influence of a combination of alcohol and marijuana. (08/31/18 T: 22-23). He further admitted that his BAC exceeded .18 of 1 percent, the level required to prove the aggravated driving while intoxicated count, two of the aggravated vehicular homicide counts, and two of the first-degree vehicular manslaughter counts. (08/31/18 T: 23). Although Petitioner did not recall having crossed the center line into the northbound lane, he "d[id] not contest what the evidence show[ed] about [him] being in the other lane." (08/31/18 T: 24). Similarly, he "d[id]n't contest that [his] vehicle was in the other lane. (*Id.*). Petitioner said he had no reason to believe that the collision occurred in the southbound lane where he had been driving. (*Id.*).

Petitioner also admitted that by operating a motor vehicle while intoxicated, he recklessly caused the deaths of Lester and Perryman. (08/31/18 T: 25). Petitioner acknowledged that he had been driving with a revoked license and that, contrary to New York State law, his girlfriend's truck lacked an ignition interlock device. (08/31/18 T: 24, 25). With regard to the allegations in the special information, Petitioner admitted that he had five prior convictions for driving while intoxicated, one of which had occurred within 10 years of the September 16, 2015 incident. (08/31/18 T: 26-28).

At defense counsel's request, Judge Healy asked Petitioner about whether he was satisfied with the legal representation he had received. (08/31/18 T: 29). Petitioner responded, "I don't believe I could ask for a better attorney." (*Id.*). Petitioner assured

Judge Healy that he had had enough time to discuss the plea with defense counsel, who had visited him "several times" at the jail. (08/31/18 T: 30).

Petitioner expressed his belief that the matter "should be done and over with" and that he "trust[ed]" that Judge Healy would "be fair and just." (08/31/18 T: 31). Petitioner again acknowledged that no one had forced him to plead guilty and that no off-the-record promises or assurances had been made to him. (08/31/18 T: 33). He also affirmed once more that he had had enough time to discuss the plea with defense counsel. (*Id.*). Judge Healy found that Petitioner's plea was knowing and voluntary. (*Id.*).

### H. Second Hearing on Persistent Felony Offender Status and Sentencing

On October 22, 2018, Judge Healy informed the parties that he was scheduling a persistent felony offender hearing based upon his review of the probation department's presentence report and the sentencing memoranda submitted by the prosecutor and defense counsel. (10/22/18 T: 2-3). Judge Healy noted that regardless of the outcome of the hearing, he intended to sentence Petitioner on the same date. (10/22/18 T: 3-4).

The persistent felony offender hearing was held on November 19, 2018. Prior to the start of the hearing, Judge Healy addressed Petitioner's recently filed motion to dismiss the indictment (SR: 154-61). (11/19/18 T: 5-6). The motion asserted that the prosecutor committed misconduct by failing to present exculpatory evidence (i.e., Lester's toxicology report) to the grand jury. (SR: 154-55). The motion also claimed that "prior to the plea agreement," Judge Healy "unilaterally and without explanation reversed course" on his sentencing promise, potentially as a result of "false information" provided by Lester's

family.  (SR: 155).  The prosecutor opposed the motion as untimely and barred by Petitioner's guilty plea.  (11/19/18 T: 7-9).

Judge Healy agreed that the motion was filed well beyond the statutory deadline for moving to dismiss the indictment and, in any event, lacked merit:

> So I find that the motions [sic] are untimely, and I deny it for that reason, but also on the merits of it, that you know, assuming this was accurate that there was an autopsy report that showed that the operator of the vehicle, Mr. Lester, maybe had a .10 or something along those lines.  I'm of the opinion that that is not information that has to be shared with the Grand Jury.  That is not the type of exculpatory evidence under the law in New York that's required to be given to a Grand Jury.[12]  So for that reason also I deny the motion.  And regarding the — my commitment as the District Attorney said the defendant never plead[ed] guilty, it's not like he plead[ed] guilty and I promised him a sentence, and then I changed my mind, which by the way I would have the right to do even if I did that.  But I didn't do that — I explained to the defendant that I changed my mind based on further review of the case, no harm was done at that time.  We had a trial scheduled, as recall I the defendant chose to plead guilty in this case, so I see no merit to that argument either.

(11/19/18 T: 9-10).

During the hearing, Petitioner did not controvert any of the predicate felony convictions or challenge them on constitutional grounds.  The prosecutor introduced various documentary exhibits and called five witnesses; the defense did not call any witnesses.  The prosecutor argued that the evidence submitted showed that by the time

---

[12]    *See*, *e.g.*, *People v. Reese*, 23 A.D.3d 1034, 1035-36 (4th Dep't 2005) (rejecting the defendant's contention that he was entitled to preindictment discovery of *Brady* material; explaining that because "*Brady* concerns exculpatory evidence that is relevant either to actual guilt or to punishment," "the concerns of *Brady* are not implicated during grand jury proceedings," which "require only legally sufficient evidence that a crime was committed and legally sufficient evidence that the accused committed the crime" and "do not concern actual guilt or punishment").

Petitioner was 42-years-old, he had accumulated seven felony convictions and 15 misdemeanor convictions and had served jail or prison time for 18 of those 22 convictions. (11/19/18 T: 77). In addition, at least five of the 22 convictions were for driving while intoxicated. (*Id.*). Judge Healy determined that the prosecution had met its burden of proving that Petitioner was a persistent felony offender as defined by P.L. § 70.10. (11/19/18 T: 67-68).

Judge Healy further found that Petitioner should be sentenced as a persistent felony offender:

> [T]he history and character of the defendant and the nature and circumstances of his conduct are such that an extended incarceration in lifetime supervision are warranted to best serve the public interest. The reason for the court's finding in that regard is the defendant's criminal history that dates back almost 30 years, 26 years at least that's been set forth at this hearing, and in the statement five prior felony convictions before this one. In this particular case the conduct was egregious and two innocent lives were lost. The defendant had a blood alcohol level of .23, almost two or three times the legal limit. The defendant's conduct over the years has evinced no realistic promise of rehabilitation. Therefore lifetime supervision is appropriate in my opinion.

(11/19/18 T: 68-69; *see also* 11/19/18 T: 78 (stating that Petitioner's "persistent pattern of serious criminal activity . . . has been unaffected by past periods of probation and parole")).

For the convictions based on V.T.L. offenses, Judge Healy imposed fines. (11/19/18 T: 84-85). For each of the felony counts in the indictment (driving while intoxicated, aggravated driving while intoxicated, driving while ability impaired by the combined influence of alcohol and drugs, aggravated vehicular homicide (seven counts), first-degree vehicular manslaughter (seven counts), second-degree manslaughter (two counts), and first-degree aggravated unlicensed operating of a motor vehicle), Judge Healy imposed

concurrent, indeterminate terms of incarceration of 20 years to life. (11/19/18 T: 85-88; *see also* SR: 38-40).

Judge Healy explained he was not imposing the minimum term; nor was he accepting the request by Lester's family and the prosecutor to impose the maximum. (11/19/18 T: 87-88). Instead, Judge Healy said he was "giving [Petitioner] credit for" pleading guilty since Petitioner "took some responsibility for what [he] did," and he also "didn't controvert the prior convictions" at the persistent felony offender hearing. (11/19/18 T: 88). Judge Healy said that if Petitioner had been convicted after trial, he would have received a sentence of 25 years to life in prison. (*Id.*).

## I.    Direct Appeal of Second Conviction

Represented by new counsel, Petitioner pursued a direct appeal of his conviction. Appellate counsel filed a brief asserting the following grounds for reversal: (1) the indictment should be dismissed because the prosecutor failed to present the victims' autopsy and toxicology reports to the grand jury; (2) the plea was not knowing, voluntary, and intelligent because Petitioner believed he was going to receive a sentence of between 12½-to-25 years, Petitioner did not have access to the victims' toxicology reports, and Petitioner did not allocute to causing the victims' deaths; (3) Judge Healy committed judicial misconduct by reneging on a promise to sentence Petitioner to a maximum term of 25 years' imprisonment; (4) Investigator Smith, the collision reconstructionist, committed investigative misconduct by returning to the scene of the crash, taking photographs of tire marks that he had not photographed originally, and preparing a report in which he stated

that the marks were caused by the crash; (5) the sentence was harsh and excessive; and (6) the sentence punished Petitioner for exercising his right to appeal.  (SR: 2-29).

Petitioner filed a *pro se* supplemental brief, repeating all of the claims raised in his counseled brief, except for the claim that his sentence was harsh and excessive.  (SR: 206-11).  The prosecution filed an opposing brief.  (SR: 178-204).

On August 26, 2021, the Appellate Division unanimously affirmed the judgment of conviction.  *People v. Wilson*, 197 A.D.3d 984 (4th Dep't 2021) ("*Wilson III*"); (SR: 253-54).  The Appellate Division agreed with the prosecution that Petitioner had "failed to preserve" his claim regarding the insufficiency of the factual allocution because he did not move to withdraw his plea or to vacate the judgment of conviction on this ground.  197 A.D.3d at 985.  In any event, the Appellate Division found that the claim was "belied by the transcript of the plea colloquy."  *Id.*

The Appellate Division rejected as "without merit" Petitioner's claim that Judge Healy breached the sentencing promise since "the transcript of the plea colloquy reflects that defendant understood he was entering an unconditional plea of guilty to the entire indictment."  *Id.*

The Appellate Division ruled that by pleading guilty, Petitioner forfeited his claim that the indictment should be dismissed because the prosecutor had not provided the grand jury with the victims' autopsy and toxicology reports.  *Id.*  The Appellate Division rejected Petitioner's *Brady* claim based on the prosecution's failure to disclose the autopsy and toxicology reports prior to the second guilty plea.  Rather, Petitioner "was aware of the

contents of those reports prior to his decision to plead guilty," as reflected in the Appellate Division's prior decision (*Wilson I*) and the record of the current proceedings. *Id.*

The Appellate Division concluded that the investigative misconduct claim could not be reviewed on direct appeal because the collision reconstructionist's actions were matters outside the appellate record. *Id.*

The Appellate Division found that Petitioner had not preserved his vindictive sentencing claim, and it declined to review the claim in the interest of justice. *Id.* Lastly, the Appellate Division determined that the sentence was not unduly harsh and severe. *Id.*

Petitioner sought leave to appeal as to each of the claims asserted in appellate counsel's brief. (SR: 255-57). The prosecution opposed the leave application. (SR: 259). On November 22, 2021, the New York Court of Appeals denied leave to appeal. *People v. Wilson*, 37 N.Y.3d 1100 (2021).

### J. Post-Judgment Collateral Motions

Petitioner filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 reasserting most of the claims he raised on direct appeal. (SR: 264-93). The prosecution filed an affirmation with exhibits in opposition. (SR: 294-341). Judge Healy appeared to interpret the motion as solely raising the *Brady* claim raised on direct appeal, which he found had been raised and determined on direct appeal; Judge Healy also denied the motion "in all respects." (SR: 342). Petitioner did not seek leave to appeal Judge Healy's February 24, 2022 decision.[13]

---

[13]    According to Respondent, the Steuben County District Attorney's Office never served Petitioner with notice of entry of Judge Healy's order. (Dkt. 18 at 15 n.9).

On February 25, 2022, Petitioner filed a *pro se* motion for a writ of error *coram nobis*, asserting that appellate counsel, who had an unspecified conflict of interest, was ineffective for failing to argue that defense counsel misled Petitioner about the length of the sentence he would receive and failing to argue the *Brady* issue properly. (SR: 364-79). The prosecution filed an affirmation in opposition. (SR: 380-92). The Appellate Division issued an order on June 3, 2022, denying the motion without explanation. (SR: 393-94). There are no leave applications to the New York Court of Appeals or orders denying leave from that court in the state court records filed by Respondent.[14]

Petitioner filed a second *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 on July 26, 2022, asserting that defense counsel was ineffective. (SR: 343-49). According to Petitioner, after Judge Healy rescinded the commitment to impose a 12½-to-25-year sentence, defense counsel reassured Petitioner that he still would receive a sentence of 12½ to 25 years in prison if he pleaded guilty. (SR: 348). The prosecution filed an affirmation in opposition. (SR: 350-61). Judge Healy denied the motion in an order dated September 7, 2022, finding that "[t]here is nothing in the record to support the defendant's allegation that his attorney told him that the court would impose the [sentence of] 12½ to

---

Therefore, Respondent believes that the 30-day period in C.P.L. § 460.10(4) for Petitioner to apply for a certificate granting leave to appeal to the Appellate Division has not yet commenced. (*Id.* (citing *People v. Washington*, 86 N.Y.2d 853, 854 (1995)).

[14]    Since the petition does not assert any claims of ineffective assistance of appellate counsel, the failure to seek leave to the New York Court of Appeals does not affect the exhaustion status of any of the claims in the petition.

25 years." (SR: 362-63). There are no leave applications to the Appellate Division or orders denying leave from that court in the state court records filed by Respondent.

### K. Section 2254 Petition

Petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), which consists of a form habeas petition that is undated (*id.* at 1-15), handwritten letters addressed to "Court" (*id.* at 16-24), and copies of briefs and documents from his state court proceedings, interspersed with copies of court opinions from other cases and handwritten pages of argument (*id.* at 25-88).

The Court construes the petition broadly to raise the following grounds for habeas relief: (1) the guilty plea was not voluntary, intelligent, and knowing because (a) Judge Healy violated his promise to impose a prison sentence of 12½ to 25 years (Dkt. 1 at 5, 70) ("Claim 1a"), (b) Petitioner was unaware at the time of the plea that Lester, the motorcycle operator, was intoxicated, because the prosecution violated *Brady* by withholding that evidence from the defense (*id.* at 5, 73) ("Claim 1b"), (c) defense counsel misled Petitioner into believing that Judge Healy would impose the 12½ to 25-year sentence (*id.* at 16-17, 23-24) ("Claim 1c"), (d) Petitioner did not know what sentence Judge Healy would impose (*id.* at 18, 21) ("Claim 1d"), and (e) the factual allocation was deficient because Petitioner did not admit to crossing the center line of the highway, and because the prosecution failed to present proof that Petitioner was driving recklessly (*id.* at 72) ("Claim 1e"); (2) the prosecutor committed misconduct by failing to present Lester's toxicology reports to the grand jury (*id.* at 5, 16-17, 20-21, 23-24, 30-34, 70-71, 75-76 ("Claim 2"); (3) Investigator Smith, the collision reconstructionist, committed investigative misconduct by filing a

supplemental report based on evidence collected a month after the crash (*id.* at 5, 16-17, 20-21, 70-71) ("Claim 3"); (4) Judge Healy sentenced Petitioner vindictively by "giv[]ing [him] more time than the first for same charges, same plea," in retaliation for exercising his right to appeal (*id.* at 73) ("Claim 4").

Respondent filed a response (Dkt. 19) to the petition, a memorandum of law in opposition (Dkt. 18), and the state court records (Dkt. 19-2) and transcripts (Dkt. 19-3).

Petitioner did not file a timely reply or request an extension of time in which to do so.

### III.    STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011) ("*Richter*").  Under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d).  In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence."  *Id.* § 2254(e)(1).

However, "when it is unclear whether AEDPA deference applies," courts may "deny writs of habeas corpus under § 2254 by engaging in *de novo* review because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("*Thompkins*"). In resolving Petitioner's petition, the Court has followed the *Thompkins* analytical approach and reviewed the claims under a *de novo* standard.

## IV.   DISCUSSION

### A. Exhaustion and Procedural Default

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1). "[W]here the petitioner had an opportunity to raise a claim but did not, and is now without a state forum for the claim, the claim is 'deemed exhausted' but procedurally barred from federal habeas review." *Lee v. Ricks*, 388 F. Supp. 2d 141, 150 (W.D.N.Y. 2005) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991)). A procedural bar to habeas review also arises when a state court's dismissal of a claim rests on a state law ground that is "independent of the federal question and adequate to support the judgment." *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

"[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." *Quinney v. Conway*, 784 F. Supp. 2d 247, 260 (W.D.N.Y. 2011) (alteration in original) (quoting *Boddie v. New York State Div. of*

*Parole*, 288 F. Supp. 2d 431, 439 (S.D.N.Y. 2003); citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)).

AEDPA also gives district courts the authority to deny a petition containing unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2). "The rationale behind § 2254(b)(2) has been described as 'spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion.'" *Williams v. McCarthy*, 708 F. Supp. 3d 309, 327 (W.D.N.Y. 2023) (alteration in original (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010))). "In this Circuit, the various formulations for the proper standard to be used when relying on § 2254(b)(2) share 'the common thread of disposing of unexhausted claims that are unquestionably meritless.'"  *Id.* (quoting *Keating*, 708 F. Supp. 2d at 299 n.11; citing *Barnes v. Uhler*, No. 6:18-CV-06428 EAW, 2021 WL 5176667, at *14 (W.D.N.Y. Nov. 8, 2021) (relying on the "unquestionably meritless" standard to dismiss unexhausted claims)).

Respondent has asserted the defenses of failure to exhaust, procedural default, or both, as to Claims 1c, 1d, and 1e (Dkt. 18 at 17-20), and Claim 4 (*id.* at 31-33). "Because all of the petition's claims are readily denied on the merits, and because the potentially unexhausted claims in particular are 'unquestionably meritless,' the Court will exercise its discretion to bypass the issues of exhaustion and procedural default." *Williams*, 708 F. Supp. 3d at 327.

### B. Merits of the Petition

#### 1. Unlawful Guilty Plea

For a guilty plea "to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'" *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981)). The Supreme Court has explained that "the representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, in determining whether a guilty plea was voluntary, knowing, and intelligent, a reviewing court is entitled to rely on the defendant's "[s]olemn declarations in open court" as they "carry a strong presumption of verity." *Id.* at 74. As discussed below, Petitioner's attacks on the lawfulness of his guilty plea are contradicted by the record generally and, in particular, his own statements made under oath.

#### a. Violation of Sentencing Promise (Claim 1a)

Petitioner asserts that his plea was unknowing, unintelligent, and involuntary because Judge Healy failed to adhere to a sentence promise of 12½ to 25 years' imprisonment. The Appellate Division found that "the transcript of the plea colloquy reflects that defendant understood he was entering an unconditional plea of guilty to the entire indictment." *Wilson III*, 197 A.D.3d at 985.

On July 16, 2018, six weeks before Petitioner pleaded guilty, Judge Healy informed the parties on the record that he was withdrawing the 12½-to-25-year sentencing

commitment, as well as the offer not to initiate a persistent felony offender proceeding. (07/16/18 T: 2-3). Judge Healy explained his reasons for doing so and offered Petitioner the opportunity to plead guilty unconditionally, i.e., without a sentencing commitment. (*Id.*). Thus, well before Petitioner pleaded guilty, he was aware that Judge Healy had withdrawn his prior sentencing commitment of a determinate term of 12½ to 25 years' imprisonment.

On August 31, 2018, the date of the suppression hearing, Judge Healy reiterated that the 12½-to-25-year sentencing promise was no longer available. (08/31/18 T: 2-3). Nonetheless, defense counsel asked Judge Healy to reconsider that decision. (*Id.*). Judge Healy unequivocally refused to do so and again explained why he believed lifetime supervision was necessary for Petitioner. (08/31/18 T: 4). Addressing Petitioner directly, Judge Healy said that any guilty plea would be unconditional. (08/31/18 T: 5). After a recess during which he discussed the matter with defense counsel, Petitioner said that he still wanted to plead guilty. (08/31/18 T: 8). Petitioner affirmed his understanding that he could be sentenced as a persistent felony offender, in which case he faced a sentence of "anywhere from 15 up to 25 years to life in prison." (08/31/18 T: 14-15). Petitioner also confirmed that no one had made him any promises, other than what had been said in court that day. (*Id.*).

In sum, there is no record support for Petitioner's contention that there was any express or implied sentencing promise by Judge Healy at the time of his guilty plea. Instead, the record demonstrates that Petitioner pleaded guilty with full awareness that

there were no guarantees concerning the length of the sentence he would receive. Claim 1a is meritless and is dismissed.

### b. Lack of Knowledge of Lester's Intoxication (Claim 1b)

Petitioner contends that his guilty plea was unknowing, unintelligent, and involuntary because, at the time he pleaded guilty, he was not aware that Lester was intoxicated at the time of the crash. The Appellate Division found that Petitioner "was aware of the contents of Lester' toxicology reports prior to his decision to plead guilty" as reflected by the record on the appeal of the current judgment and the prior decision vacating the original guilty plea. *Wilson III*, 197 A.D.3d at 985. Again, the Appellate Division correctly found the facts and applied the law in dismissing this claim.

Following the Appellate Division's vacatur of the first conviction, Petitioner testified at the remittal hearing held by Judge Bender in April 2018, that he received the victims' autopsy and toxicology reports within a couple weeks of April 22, 2016, the date he was originally scheduled to be sentenced on the first conviction:

> The only time I actually received them is when I stood at that desk right there and said, I can't be sentenced today, I don't feel comfortable with my life in this man's hands,[15] I feel like I'm in a kangaroo court. I went back to the County jail and then I was appointed you, Rome Canzano, and within two weeks you were actually working for me, you had the autopsy reports here in this courtroom, you handed them to me face down on that desk. You said, don't read them right now. We did the motions. You told me to go back to the County Court. I mean, go back to the County jail and read it and decide what you really want to do. I went back there. I already knew what they said,[16] I didn't even have to read them, just by—

---

[15]    Petitioner presumably was referring to first counsel.

[16]    Petitioner testified at the remittal hearing that when he was brought to the hospital after the crash, he was told by New York State Police Investigator Stephen Crouch that

(04/09/18 T: 22). In addition, shortly before June 6, 2016, defense counsel filed the motion to withdraw the first plea based on the prosecution's failure to disclose the autopsy and toxicology reports. (*See* 06/06/16 T: 2-3). Petitioner certainly had access to them by that date. Furthermore, on August 31, 2018, the date that Petitioner pleaded guilty for the second time, he confirmed his understanding that if he proceeded to trial, he would be able to introduce the victims' autopsy and toxicology reports into evidence. (08/31/18 T: 7). In sum, the record contradicts Petitioner's assertion that he was unaware of the contents of the victims' autopsy and toxicology reports before he pleaded guilty in August 2018. Claim 1b is meritless and is dismissed.

### c. Ineffective Assistance of Counsel (Claim 1c)

Petitioner claims that his plea was not knowing, voluntary, and intelligent because defense counsel misled him into believing that Judge Healy definitely would impose a sentence of 12½ to 25 years' imprisonment in exchange for his plea. As Respondent argues, this claim is contradicted by the record. (Dkt. 18 at 22, 24-25).

As discussed above, Judge Healy clearly stated on July 16, 2018, over a month before Petitioner pleaded guilty, that he was withdrawing the sentencing promise of 12½ to 25 years. On August 31, 2018, Judge Healy declined defense counsel's request to reconsider his withdrawal of the 12½-to-25-year sentencing promise. On that same date, Petitioner confirmed, multiple times, that he understood that any guilty plea would be

---

there was a "good possibility that [Lester] was drinking," that Lester had "a past history of DWIs hi[m]self," and that Lester had "recently just received his license back after losing it for a DWI." (04/09/18 T: 9).

unconditional, meaning without a sentencing commitment.  Then, at Judge Healy's request, defense counsel and the prosecutor were asked to explain their understanding of what an unconditional guilty plea entailed.  Both attorneys stated that it meant Petitioner was pleading guilty without a sentencing promise.  In addition, Petitioner stated under oath that no one had made any off-the-record promises to induce him to plead guilty and affirmed to Judge Healy that all of his statement during the plea proceeding were true.  (08/31/18 T: 28, 33).

Petitioner has not come forward with any evidence to substantiate his claim that defense counsel promised him that Judge Healy, despite repeatedly stating that lifetime supervision was necessary for Petitioner, instead would impose a determinate sentence of 12½ to 25 years in prison.  Petitioner's belated and conclusory assertions are insufficient to rebut the presumption of truthfulness accorded to his sworn statements that his guilty plea was not founded on any off-the-record promises.  Claim 1c is meritless and is dismissed.

### d.  Lack of Knowledge of Sentence Length (Claim 1d)

Petitioner asserts that his plea was not knowing, voluntary, and intelligent because he did not know what length of sentence he would receive.  As Respondent argues, "this claim reflects an implicit admission that he pleaded guilty with no sentencing promise, such that his plea was not induced by a promise of a 12½-to-25-year sentence."  (Dkt. 18 at 25).

In any event, Petitioner cites no legal authority for the proposition that pleading guilty without a sentence promise violates due process, and the Court has found none.  To

the contrary, defendants have raised ineffective assistance claims based on their attorneys' failures to advise them they could plead guilty without a plea agreement. *See*, *e.g.*, *Randolph v. United States*, No. 6:16-CR-06116-FPG, 2018 WL 6111143, at *3 (W.D.N.Y. Nov. 21, 2018) ("Randolph . . . argues that trial counsel should have . . . advise[d] him to appear and enter an 'open guilty plea' (i.e., plead guilty plea without an agreement in place) to the only charge in the indictment that allegedly applied to him. . . ."); *Fazio v. United States*, No. 11-CR-0873 (KBF), 2017 WL 4232574, at *4 (S.D.N.Y. Sept. 22, 2017) (finding no ineffectiveness where petitioner challenged his attorneys' failure "to explain the possibility of an 'open plea' to the indictment" and argued that they "offered 'deficient advice' because a 'reasonable counsel would have said more'" to convince him to accept an open plea); *Pica v. United States*, No. 13-CV-1150 (CBA), 2017 WL 1079972, at *3 (E.D.N.Y. Mar. 21, 2017) ("Pica argues that [his two attorneys] provided ineffective assistance because neither fully advised him that he could plead guilty without a plea agreement, known as an 'open plea.'"). Claim 1d is meritless and is dismissed.

### e. Insufficient Factual Allocution (Claim 1e)

According to Petitioner, his guilty plea violates due process because the factual allocution was deficient. In particular, Petitioner claims that he never admitted to crossing the center line of the highway into the motorcycle's lane of travel and that the prosecution failed to present proof that he was driving recklessly. When he raised this claim on direct appeal, the Appellate Division found that it was "belied by the transcript of the plea colloquy." *Wilson III*, 197 A.D.3d at 985. As Respondent argues, this claim is not

cognizable on habeas review and is, in any event, contradicted by the record. (Dkt. 18 at 26-27, 28-29).

It is well settled that "the United States Constitution does not require a factual inquiry before a court may accept a defendant's guilty plea." *Hill v. West*, 599 F. Supp. 2d 371, 388 (W.D.N.Y. 2009) (citing *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) ("[D]ue process does not mandate a factual basis inquiry by state courts. . . ." (citing *McCarthy v. United States*, 394 U.S. 459, 465 (1969))). "As the Second Circuit explicitly noted in *Willbright*, it is Rule 11 of the Federal Rules of Criminal Procedure, 'not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea.'" *Id.* (quoting *Willbright*, 745 F.2d at 780; citing *Ames v. New York State Div. of Parole*, 772 F.2d 13, 15 (2d Cir. 1985) ("The State court's [guilty plea] inquiry did not have to be patterned after FED. R.CRIM. P. 11.")).

It is equally well settled that a federal district court may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, Petitioner's challenge to the sufficiency of his factual allocution asserts, at most, an error of New York State law. Because Claim 1e does not present a federal constitutional issue, it is not cognizable in this habeas proceeding.

Moreover, the factual allocution does not reflect the alleged deficiencies cited by Petitioner. While Petitioner said he did not recall having crossed the center line, he admitted that his truck was in the northbound lane and that he had no reason to believe the

collision had occurred in the southbound lane where he had initially been traveling. (08/31/18 T: 24). In addition, Petitioner specifically admitted that his reckless driving caused the deaths of Lester and Perryman. (08/31/18 T: 25). He also admitted that he had been driving while intoxicated and that his blood alcohol level exceeded .18 of one percent, the level required to prove the charges of aggravated driving while intoxicated, aggravated vehicular homicide, and first-degree vehicular manslaughter. (08/31/18 T: 23). Claim 1e is dismissed as not cognizable on habeas review and, in any event, meritless.

### 2. Prosecutorial Misconduct in the Grand Jury (Claim 2)

Petitioner claims that the indictment should have been dismissed as defective because the prosecutor committed misconduct by failing to present evidence of Lester's intoxication to the grand jury. As Respondent argues, this claim is foreclosed by Petitioner's knowing, voluntary, and intelligent guilty plea. (Dkt. 18 at 29-30).

"Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea." *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("[A] guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]"). Thus, "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within . . . [constitutional] standards. . . .'" *Tollett*, 411 U.S. at 267.

As discussed above, Petitioner has not established that defense counsel rendered constitutionally inadequate performance with regard to his decision to plead guilty. Nor has Petitioner demonstrated that his guilty plea was anything but voluntary, knowing, and intelligent. Therefore, *Tollett* precludes habeas review of Petitioner's claim that the prosecutor committed misconduct before the grand jury. *See*, *e.g.*, *Woods v. Superintendent*, No. 9:19-CV-505 (GLS), 2020 WL 3642311, at *11-12 (N.D.N.Y. July 6, 2020) (finding that *Tollett* foreclosed review of claim that prosecutor procured indictment from grand jury using false evidence because the events giving rise to misconduct claim occurred prior to habeas petitioner's voluntary guilty plea (citing *Pena v. Sheahan*, No. 115CV02455VECSDA, 2018 WL 3639927, at *15 (S.D.N.Y. June 22, 2018) (holding that prosecutorial misconduct claims by habeas petitioner who pleaded guilty voluntarily were "irrelevant to the constitutional validity of his conviction and, thus, cannot be the basis for federal habeas review"), *adopted*, No. 15CV2455VECSDA, 2018 WL 3632499 (S.D.N.Y. July 27, 2018)). Accordingly, Claim 2 is dismissed as barred by *Tollett*.

### 3. Investigative Misconduct (Claim 3)

Petitioner contends that Investigator Smith, the collision reconstructionist, committed investigative misconduct by returning to the scene a month after the crash, gathering additional evidence, and submitting a supplemental report incorporating that evidence. After the Appellate Division declined to review this claim because it was based on events not reflected in the record, Petitioner raised it in his first motion to vacate the judgment under C.P.L. § 440.10. (SR: 288-89). However, Judge Healy only considered

the motion to include the claim raising the alleged prosecutorial misconduct in the grand jury and did not adjudicate the investigative misconduct claim. (SR: 342).

As Respondent contends, this claim, like the prosecutorial misconduct claim, involves events that occurred prior to Petitioner's knowing, voluntary, and intelligent guilty plea. (Dkt. 18 at 29-30). Therefore, habeas review of the claim is foreclosed under *Tollett*. *See, e.g.*, *Taylor v. Unger*, No. 1:11-CV-1078 MAT, 2012 WL 5288733, at *4 (W.D.N.Y. Oct. 23, 2012) ("Viewing the claim as one of police misconduct does not change the result. The allegedly improper misconduct occurred prior to the entry of Taylor's guilty plea, and thus is barred under *Tollett*." (citing *Lloyd v. Walker*, 771 F. Supp. 570, 575 (E.D.N.Y. 1991) (stating that the "claims concerning the conduct of the investigating and arresting police officers . . . would have to be dismissed since they were waived by petitioner's guilty plea."); *Smith v. Lacy*, No. 01 CIV. 4318(DC), 2002 WL 826825, at *7 (S.D.N.Y. Apr. 30, 2002) ("With his guilty plea, petitioner waived his claim of police misconduct during his arrest.")). Claim 3 accordingly is dismissed under *Tollett*.

### 4. Vindictive Sentencing (Claim 4)

Petitioner asserts that Judge Healy sentenced him vindictively because he exercised his right to appeal. The Appellate Division declined to review the substance of this unpreserved claim. *Wilson III*, 193 A.D.3d at 985. As Respondent argues (Dkt. 18 at 31-35), it is meritless.

"Due process requires that, after a defendant has successfully attacked his conviction, vindictiveness must play no part in the sentence he later receives." *Somerville*

*v. Hunt*, 695 F.3d 218, 222 (2d Cir. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).  The Supreme Court stated in *Pearce* that:

> [i]n order to assure the absence of . . . a [vindictive] motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.  Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.  And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

395 U.S. at 725-26.  However, the Supreme Court's decisions following *Pearce* "have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'"  *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (alteration in original) (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)).    Thus, as the Second Circuit has explained, there is no presumption of vindictiveness if the lengthier sentence: "1) is based on new evidence at retrial; 2) is determined by a different jury; 3) follows a trial *de novo*; 4) follows a trial when the first sentence was imposed after a guilty plea; or 5) is imposed by a different sentencing judge."  *United States v. Atehortva*, 69 F.3d 679, 683 (2d Cir. 1995) (citations omitted).  "In these cases, the burden lies with the defendant to demonstrate that the resentence was the result of vindictiveness."  *Id.*

Here, Petitioner was sentenced by a different judge than the original sentencing judge.  Accordingly, the *Pearce* presumption of vindictiveness does not apply.  *See McCullough*, 475 U.S. at 140 ("The presumption is also inapplicable because different sentencers assessed the varying sentences that McCullough received.    In such

circumstances, a sentence 'increase' cannot truly be said to have taken place."); *see also United States v. Perez*, 904 F.2d 142, 146 (2d Cir. 1990) (stating that "there is no realistic motive for vindictive sentencing" by the sentencing judge where the defendant obtained a reversal of his conviction based on a different judge's ruling). Thus, Petitioner must establish actual vindictiveness on Judge Healy's part.

Notably, when Petitioner raised this claim on direct appeal, he offered nothing but speculation as to the reason for the longer sentence. (*See* SR: 25 ("Mr. Wilson[] theorizes that the County Court penalized him for exercising his right to an appeal.")). Petitioner also mischaracterized the record by asserting that Judge Healy "failed to place on the record the reasons for the higher sentence." (SR: 26).

Contrary to Petitioner's contention, Judge Healy painstakingly articulated not only the reasons for withdrawing the original sentencing commitment of 12½ to 25 years, but also for declining to impose the minimum persistent felony offender sentence of 15 years to life. Judge Healy pointed to Petitioner's "persistent pattern of serious criminal activity" (11/19/18 T: 87) dating back at least 26 years, which included 22 prior felony convictions, five of which were for driving while intoxicated (11/19/18 T: 68). Judge Healy noted that probation, local jail time, three prior prison terms, and parole supervision had failed to deter Petitioner from continuing to engage in criminal activities. (11/19/18 T: 86). Judge Healy found that in this particular case, Petitioner's "egregious" conduct—including that he was driving with a BAC level about three times the legal limit—had resulted in the loss of "two innocent lives." (11/19/18 T: 68-69). Judge Healy also found it significant that Petitioner continued to blame the crash on the two victims. (11/19/18 T: 85-86). Judge

Healy did not impose the maximum sentence of 25 years to life, even though the prosecutor and the victims' family members had requested it.

Petitioner now asserts that Judge Healy imposed "more time" for the "same charges, same plea." (Dkt. 1 at 73). That statement is factually incorrect. Petitioner's first guilty plea entailed only five offenses, whereas the second guilty plea involved the entire 25-count indictment. Thus, during his second guilty plea, Petitioner accepted responsibility for a greater amount of criminal conduct.

Moreover, the Supreme Court has never held that it is *necessary* that something new occur before a judge can impose an increased sentence. Although "*Pearce* permits 'a sentencing authority [to] justify an increased sentence by affirmatively identifying relevant conduct or events that occurred *subsequent* to the original sentencing proceedings,'" *McCullough*, 475 U.S. at 141 (emphasis supplied) (alteration in original) (quoting *Wasman v. United States*, 468 U.S. 559, 572 (1984)), "[t]his language . . . was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified," *id.* Judge Healy therefore was not precluded from considering the additional criminal charges simply because they existed at the time of the first sentencing. *See McCullough*, 475 U.S. at 141.

In sum, Petitioner has not identified any evidence of actual vindictiveness in the record. Judge Healy justified the increased sentence by relying on objective information, and he ensured his reasons for doing so affirmatively appeared on the record. Petitioner has not established that a due process violation occurred at his sentencing. The vindictive sentencing claim is meritless and is dismissed.

V.    **CONCLUSION**

For the reasons discussed above, the request for a writ of habeas corpus is denied, and the petition (Dkt. 1) is dismissed.  The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(1), (2).  The Clerk of Court is directed to enter judgment in Respondent's favor and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    July 8, 2025
          Rochester, New York